IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

RAED EL YORDI CHEBIB,
A# 044-940-480,

    Petitioner,

vs.                                         Case No. 4:19cv582-MCR-CAS

DEPARTMENT OF HOMELAND
SECURITY, et al.,

    Respondents.
_____/

## REPORT AND RECOMMENDATION

On December 2, 2019, the pro se Petitioner submitted a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Petitioner did not pay the $5.00 filing fee or submit a motion seeking leave to proceed in forma pauperis at the time of case initiation. An Order was entered requiring Petitioner to do one or the other to proceed, ECF No. 3, and he timely paid the $5.00 filing fee for this case, ECF No. 4, as well as filed two motions requesting in forma pauperis status. ECF Nos. 5-6. Those motions were denied as moot and the petition was been reviewed.

Petitioner is a native of Venezuela and is currently detained in the Wakulla County Detention Facility.  ECF No. 1 at 4. Petitioner alleged that he "entered the United States as a Lawful Permanent resident on or about March 19, 1995."  ECF No. 1 at 4.  Petitioner reported being taken into ICE [Immigration and Customs Enforcement] custody on January 14, 2019, and was ordered removed by an Immigration Judge on April 19, 2019.  Id.

Petitioner said he is not a threat to the community or a potential flight risk, and has "cooperated fully" with ICE's efforts to effect his removal.  Id. at 2, 4.  Petitioner stated that his "removal is not reasonably foreseeable" and he alleged that ICE was "unable to remove" him.  Id. at 4.  Petitioner sought release from detention pursuant to Zadyvas v. Davis under an order of supervision.  Id. at 2, 6.

The petition was deemed sufficient for service and Respondents[1] were directed to show good cause why the petition should not be granted.  ECF No. 7.  Within that Order, Petitioner was given the opportunity to file a reply to the response filed by Respondents.  Id.

---

[1] The Attorney General was served along with ICE Acting Director Mark A. Morgan who was substituted as a Respondent in place of the Department of Homeland Security.  Mr. Morgan was named as a Respondent because Immigration and Customs Enforcement (ICE), an agency within the United States Department of Homeland Security, directs the detention and removal of alien detainees.  ECF No. 7.

Respondents have demonstrated that on March 8, 2018, Petitioner was convicted[2] in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, for the felony offense of battery of a child, a violation of Florida Statutes § 784.085(1) and (2). ECF No. 10 at 2. Petitioner was sentenced to five years probation. *Id.* Following that conviction, Petitioner was issued a Notice to Appear ("NTA") on January 14, 2019, "charging him as removable from the United States under section 237(a)(2)(E)(i) of the Immigration and Nationality Act ('INA'), as an alien who at any time after entry has been convicted of a crime of domestic violence, or a crime of child abuse, child neglect, or child abandonment." *Id.*; see also Jayroe Decl. (ECF No. 10-1 at p. 2, ¶ 3).

Petitioner had a hearing before an Immigration Judge on March 4, 2019. ECF No. 10 at 3. In the hearing, Petitioner admitted the allegations set forth in the NTC, "including that he was a native and citizen of Venezuela." *Id.* An Order of removal was entered the following month, on April 19, 2019.[3] *Id.*

---

[2] Evidence submitted in this case reveals Petitioner was ordered removed because of his "criminal conviction for battery of a child." *See* ECF No. 11 at 18 (Decision to Continue Detention, issued in November 2019). Notably, Petitioner has shown that adjudication was withheld and he was sentenced to five years probation with the possibility of early termination after three years. ECF No. 11 at 16.

[3] It appears that the Order of removal became administratively final because Petitioner did not appeal the Order. ECF No. 11 at 9.

ICE requested a travel document for Petitioner from the Venezuala Consulate in Washington, D.C. on July 19, 2019.  *Id.*  On that same day, Petitioner was advised of his responsibility to assist ICE in the removal process, included on the "Warning for Failure to Depart" form (referenced as a Form I-229(a)).  *Id.*  Petitioner would be served with that form several more times on August 16, 2019, September 16, 2019, and December 17, 2019.  *Id.* at 4.  When Petitioner was served with the Form I-229(a) in December, he "refused to sign the form."  *Id.*  Respondents assert that Petitioner said "that he would not complete necessary documentation (Form I-229(a)) to assist with his removal." ECF No. 10 at 8.

Respondents advise that the Venezuela Consulate issued a travel document on August 22, 2019, with an expiration date of October 20, 2019. ECF No. 10 at 4.  Four days before that expiration, "a 180-day transfer checklist was sent . . . to review the case and make a custody determination."  *Id.*  On November 14, 2019, ICE notified Petitioner that his detention would continue.  *Id.*   In mid-January 2020, ICE "requested an itinerary from a Miami Deportation Officer in charge of scheduling removals, who advised that Petitioner's removal is tentatively scheduled for mid-February 2020."  *Id.* at 5.

In light of that information, Respondents assert that "there is a significant likelihood that the Petitioner will be removed to Venezuela in the reasonably foreseeable future." ECF No. 10 at 5. However, in the next sentence, Respondents also argue that the petition should be denied because Petitioner "has frustrated his own removal." *Id.*

The basis for the frustration argument appears to rest on Petitioner's refusal to sign the Form I-229(a) in December 2019. Yet ICE also reports[4] that February 14, 2020, was the "anticipated removal date for Petitioner." ECF No. 10 at 8. The response states that "[t]he date of removal was delayed but is anticipated to be rescheduled in the immediate future." *Id.* Thus, Respondents argue that its "evidence is sufficient to rebut Petitioner's claim that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

In early March, Petitioner filed a reply, ECF No. 11, demonstrating that he was still in detention. *Id.* at 12. Petitioner also argues that "ICE cannot seriously contend that Petitioner is not cooperating." *Id.* at 4. He advises that he "made a timely application in good faith for travel

---

[4] The information about Petitioner's anticipated February 2020 removal was included within the Response, but not supported by evidence. ECF No. 10 at 8. The supporting declaration submitted with the Response did not include any information about events in February. *See* ECF No. 10-1.

documents" and he "provided truthful information to ICE concerning his place or birth and citizenship." *Id.* He further argues that he has not taken any action to impede efforts to remove him. *Id.* at 4-5.

Petitioner states that he did not refuse to sign the form, but was asking why he needed "to sign the form when the 180 days period has passed already, based on the fact that his final order of deportation [was] on April 19th 2019." *Id.* at 4-5. Petitioner states that Deportation Officer Jayroe took his question "as a refusal." *Id.* at 5. Petitioner further contends that he has been unable to reach the Venezuelan Consulate from the phone system at the Wakulla County Jail. *Id.* at 5-6. Further, Petitioner contends there is no direct flight from the United States to Venezuela and he claims "that no <u>VALID</u> travel documents have been issued to date." *Id.* at 7.[5] He maintains that his continued detention is unlawful, that his removal to Venezuela is not reasonably foreseeable, and that the petition should be granted. *Id.* at 9, 11.

**Analysis**

---

[5] Petitioner argues that travel documents are not valid due to the federal government's recognition of Juan Guaido as the President of Venezuela which is contested by Nicolas Maduro, who the government deems is illegitimate, but Petitioner asserts is in "full and total control of all branches of the government inside Venezuela." *See* ECF No. 11 at 6, 31.

To be clear, Petitioner has not challenged the final order of removal in this case. Rather, Petitioner seeks release from detention pursuant to Zadvydas v. Davis, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001). This Court has jurisdiction over the petition. 28 U.S.C. § 2241.

In Zadvydas, the United States Supreme Court was asked to decide whether 8 U.S.C. § 1231(a)(6) authorized indefinite detention of a removable alien.[6] The Court held that the continued detention of legal permanent aliens beyond the mandated 90-day removal period was permissible under the Constitution, but only for as long as was "reasonably necessary to bring about that alien's removal from the United States." Id., at 689, 121 S. Ct. at 2498. The Court concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id., at 699, 121 S. Ct. at 2503. For the sake of uniform administration by the federal courts, the Court held that "the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.'" Clark v.

---

[6] Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States. 8 U.S.C. § 1231(a)(1)(A).

Martinez, 543 U.S. 371, 125 S. Ct. 716, 722, 160 L. Ed. 2d 734 (2005) (quoting Zadvydas, 533 U.S. at 701, 121 S. Ct. at 2505).

In Clark v. Martinez, the Court extended its interpretation of 8 U.S.C. § 1231(a)(6) to inadmissible aliens.[7] The Court found no reason why the period of time reasonably necessary to effect removal would be longer for an inadmissible alien than for a resident alien. Clark, 543 U.S. at 386, 125 S. Ct. at 727; *see also* Benitez v. Wallis, 402 F.3d 1133, 1135 (11th Cir. 2005). Thus, the six month presumptively reasonable period of time is the same for both admitted and inadmissible aliens. Benitez, 402 F.3d at 1135. Accordingly, under Clark and Zadvydas, when an alien[8] shows he has been held more than six months beyond the removal period and his removal is not reasonably foreseeable, a § 2241 petition should be granted. Clark, 543 U.S. at 386-387, 125 S. Ct. at 727; Benitez, 402 F.3d at 1135 (relying on Clark to hold that an inadmissible alien must be released and paroled into the country if he has been detained beyond the

---

[7] The relevant statute provides: "An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or entry conditions, violations of criminal laws, or threatening national security] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6) (quoted in Benitez v. Wallis, 402 F.3d 1133, 1134 (11th Cir. 2005)).

[8] Petitioner was lawfully admitted to the United States and is a lawful permanent resident. ECF No. 10-1 at 2.

six month removal period and his removal is not reasonably foreseeable).[9]

Zadvydas established a burden-shifting analysis for consideration of § 2241 habeas petitions. After the presumptive six month removal period has expired, an alien must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701, 121 S. Ct. at 2505. Thereafter, "the Government must respond with evidence sufficient to rebut that showing." *Id.*

Here, Petitioner's factual allegations in the petition[10] were sufficient to meet his burden under Zadvydas. ECF No. 1. Petitioner declared that he had been detained for more than six months since issuance of the removal order, had "cooperated fully with all efforts by I.C.C. to remove" him, had maintained good behavior while in detention, was not a flight risk, had family in West Palm Beach who were awaiting his release, and he provided his address where he could reside upon release. *Id.* at 4-5. Petitioner asserted there was "no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 6.

---

[9] An alien must be detained during the "removal period." 8 U.S.C. § 1231(a)(2).

[10] Petitioner signed the petition under penalty of perjury. ECF No. 1 at 7-8.

The burden shifted to Respondents to rebut that showing and demonstrate there *is* a significant likelihood of removal in the reasonably foreseeable future.  First, Respondents claimed that removal was likely and pointed to issuance of a travel document for Petitioner on August 22, 2019.  ECF No. 10 at 4.  There appears to have been an approximate two month window for removal before that document expired on October 20, 2019.  It is unreported why Petitioner was not removed if the travel document was valid, a fact Petitioner contests.  Indeed, no information was provided to explain the lack of action to carry out Petitioner's removal.  The fact that one travel document was issued but no action taken cannot justify Petitioner's continued removal on the basis that his removal is likely.

Adding weight to that conclusion is the fact that an unsupported assertion was made that Petitioner would be removed in February 2020.  Respondents did not demonstrate that a second travel document was issued.  Moreover, Respondents filed their response four days after it was claimed that Petitioner would be removed (on February 14, 2020), without any explanation as to why Petitioner was not removed.  ECF No. 10 at 8.

Respondents made another unsupported accusation that Petitioner had hindered his removal, but that statement is not supported by the record.  The failure to sign one of four I-229(a) forms does not show

Petitioner hindered his removal; Petitioner had already signed three prior forms.  Petitioner did not provide inaccurate information, did not refuse to make telephone calls, did not refuse to apply for a travel document, board a plane, or otherwise prevent his removal.  By all accounts, Petitioner has cooperated in the removal process, but that process has been at a standstill for unexplained reasons.

Petitioner has now been detained for nearly two years.  As the post-removal confinement period grows for Petitioner, the "reasonably foreseeable future" period must diminish.  <u>Drummond v. Lynch</u>, No. 4:15cv560-RH/CAS, 2016 WL 4154925, at *4 (N.D. Fla. June 27, 2016), report and recommendation adopted, No. 4:15cv560-RH/CAS, 2016 WL 4157348 (N.D. Fla. Aug. 4, 2016) (recommending petitioner be released from detention).  There is no explanation of difficulty in obtaining documents to verity Petitioner's identity, nor are future issuances of a travel document addressed.  Respondents have not shown a "significant likelihood" that Petitioner will be removed in the reasonably foreseeable future.  It would only be speculation to conclude that a travel document is forthcoming after this extended period of time, especially in light of current events.

The Centers for Disease Control and Prevention recently warned of the evolving threat represented by the outbreak and spread of coronavirus (COVID-19) in the United States. The World Health Organization has labeled COVID-19 a global pandemic and the U.S. Department of State has advised U.S. citizens to avoid all international travel due to the global impact of COVID-19. Judicial notice is taken that commercial departure to foreign nations is extremely limited, if not impossible.[11] The Department of State advises that many countries have travel restrictions, closed airports and their borders, and imposed mandatory quarantines. As the COVID-19 pandemic continues to develop, the ability of ICE to remove detainees from the United States is highly questionable. It is certainly not likely, much less significantly likely to occur in the reasonably foreseeable future.

When an alien shows that he has been held beyond the presumptive removal period and his removal is not reasonably foreseeable, his § 2241 habeas corpus petition should be granted. Clark, 543 U.S. at 386-387, 125 S.Ct. at 727; Benitez, 402 F.3d at 1135. An alien who cannot be removed

---

[11] Judicial notice is also taken that the Department of Homeland Security suspended flights to Venezuela indefinitely as of May 15, 2019, due to political instability and increased tensions in Venezuela. *See* https://www.dhs.gov/news/2019/05/15/dhs-determines-conditions-venezuela-threaten-safety-and-security-passengers-aircraft.

Case No. 4:19cv582-MCR-CAS

cannot "be condemned to an indefinite term of imprisonment within the United States."  Zadvydas, 533 U.S. at 695, 121 S. Ct. at 2502.

The statute governing release provides that if an alien "is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."  8 U.S.C. § 1231(a)(3).  The regulations require the alien to: "(A) to appear before an immigration officer periodically for identification; (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government; (C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and (D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien."  8 U.S.C. § 1231(a)(3).  Respondents should be ordered to release Petitioner from custody pursuant to § 1231(a)(3).

**RECOMMENDATION**

Accordingly, it is **RECOMMENDED** that the petition for writ of habeas corpus filed by Raed El Yordi Chebib under 28 U.S.C. § 2241, ECF No. 1,

be **GRANTED**, and the Court **ORDER** that Petitioner be immediately released upon conditions of supervision pursuant to 8 U.S.C. § 1231(a)(3).

**IN CHAMBERS** at Tallahassee, Florida, on April 1, 2020.

　　　　　　　　　　　　　S/    Charles A. Stampelos
　　　　　　　　　　　　**CHARLES A. STAMPELOS**
　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**